## O'BRIEN v. UNITED STATES.
### No. 7112.

United States Court of Appeals for the
District of Columbia.
Argued May 9, 1938.
Decided July 11, 1938.

John H. Burnett, Myron G. Ehrlich, and James J. Laughlin, all of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Roger Robb, Asst. U. S. Atty., both of Washington, D. C.

Before GRONER, Chief Justice, MILLER, Associate Justice, and PROCTOR, District Judge.

GRONER, C. J.

This is an appeal from a judgment of conviction on an indictment for perjury. Appellant was set upon, assaulted, and shot down in the streets of Washington on the 21st day of July, 1936. He was taken to a hospital, where two days later he made a statement to Lieutenant Cox and two other members of the police department, in which he named Samuel S. Montgomery, Joseph S. Bond, and George F. Tear as his assailants. The statement attributed the assault to bad feeling growing out of rivalry between himself and Montgomery in the "bootlegging" business. The statement was stenographically recorded. Montgomery and the two other accused were subsequently indicted and brought to trial, and appellant was called by the United States as a witness against them. When under oath in that trial, appellant testified that he did not remember making certain material parts of the statement, and he denied that he had made certain other material parts of it. Because of the alleged falsity of this testimony, he was indicted for perjury, and it is from his conviction that he appeals.

First. Appellant objected to the admission in evidence of the hospital statement on the ground that it had been procured from him by promises and threats. He requested the court to hear evidence upon this question in the absence of the jury, and offered to prove that his statement was procured from him by the promise of the police to release Miss Viola Jennings, who was with him at the time of the assault and who had since been held in the House of Detention. The trial judge stated, in substance, that he was of opinion the evidence was not pertinent to the issue, but that he would permit it to be heard by the jury and would subsequently rule upon its effect on the admissibility of the statement. Exception was taken to this ruling, on the ground that the court should itself first consider and determine whether the statement was admissible. Ordinarily it is proper procedure, in a criminal case where an incriminating statement of the accused is claimed to have been obtained by duress, for the judge to hear the evidence and determine its admissibility out of the presence of the jury. But that rule has no application here, for the question was not the incriminating nature of the statement but whether, as charged in the indictment, the statement had in fact been made. If appellant had been indicted for the violation of the liquor laws which his statement re-

vealed, proof that duress and coercion induced the statement would have rendered it inadmissible. But that is not this case. Or if the charge of the indictment had been that appellant, having first stated on oath that a certain fact was true, had later stated on oath that it was not true, and if appellant had defended on the ground that his first statement was made under duress, the admissibility of that statement might be questionable. State v. Thornton, 245 Mo. 436, 150 S.W. 1048. But that also is not this case. Instead, appellant was indicted for testifying under oath that a fact which indisputably occurred, did not occur. In that view the question is not whether appellant made the statement voluntarily or involuntarily or whether the statement made was true or false,—for it was not the truth or falsity of what he said which was involved, but simply the fact of his having said it. The government's case in this aspect was directed to proof of that fact alone. We think the statement was properly admitted.

**Second.** Appellant insists the court committed error in allowing the stenographer who recorded his statement to read to the jury those parts of it which proved his commission of other criminal offenses. The evidence was admitted under these circumstances: In his statement to the police appellant not only told the names of his assailants but also the facts lying behind the occurrence,—how he and his assailants were rival bootleggers and how disputes had arisen between them over the distribution of what we may call marketing areas. Appellant objected to the introduction of these parts of the statement on the ground that in the prosecution for one criminal offense evidence of the commission of another and separate crime is inadmissible. We have said in a number of cases that distinct and different crimes independent of that charged may not be used to establish guilt. Borum v. United States, 61 App.D.C. 4, 6, 56 F.2d 301. And we have also said that, when such evidence is admitted and shown in the record, we will presume it to be injurious. Parlton v. United States, 64 App.D.C. 169, 173, 75 F.2d 772. But these rules do not require a reversal in this case. Here the sole question the jury had to decide was whether the statement was made and, if it was made, whether appellant subsequently denied, on the trial

of the criminal case against his assailants, that he made it. Appellant tacitly, if not expressly, admitted that he made the statement, and he has nowhere denied that he afterward testified he did not make it. Throughout, his only defense has been that the statement was improperly induced, and, as we have shown, that point is without merit. Under the circumstances, therefore, the jury could have done nothing but convict him, and the exposure of his unlawful activities could not in any manner have been prejudicial. The situation might be different if the jury fixed the punishment in this jurisdiction, for such evidence as was introduced in this case might have induced the jury to be severe; but here the court fixes the sentence,—and in this case appellant received the statutory minimum. Since there can be no question of appellant's guilt, we are of opinion that the error charged to have been committed in this connection was, if committed, harmless. Howe v. United States, 61 App.D.C. 8, 9, 56 F.2d 305.

**Third.** The final assignment is that the court erred in sentencing appellant under the District of Columbia Code perjury provision,[1] instead of under the Federal Penal Code provision.[2] The limit of punishment in the former is two years minimum and ten years maximum, while in the latter the limit is a fine and imprisonment not to exceed five years. The argument is that appellant cannot be punished in the United States Court for the District of Columbia more severely than he could be punished in any other United States Court. We think there is nothing to the point.

In Johnson v. United States, 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142, the Supreme Court said that the criminal code of the District and the federal criminal code had definite territorial applications and might subsist together; that the federal code embraces general legislation of general operation, while the District code embraces local legislation of local operation; and that an intent to affect or repeal the latter by the enactment of the former must clearly appear and will not be implied. On that principle we held in Kleindienst v. United States, 48 App.D.C. 190, on an indictment for adultery,—which under the District code is a misdemeanor and under the federal penal code a felony,—that the accused on his conviction should be sen-

---

[1] Sec. 858, D.C.Code 1924, D.C.Code 1929, T. 6, § 131.

[2] 18 U.S.C.A. § 231.

tenced under the former and not the latter. Likewise in the Johnson Case, 38 App.D.C. 347, we held the provisions of the federal code giving the jury the right to qualify its verdict by the addition of the words "without capital punishment", did not apply in the District of Columbia where no such right is given; and on appeal the Supreme Court (225 U.S. at page 417, 32 S.Ct. at page 752) said:

"The Codes are separate instruments, and no certain test can be deduced from pointing out particular likenesses or differences. But the effect of separation is important and necessarily had its purpose. The Codes had in the main special spheres of operation and provisions accommodated to such spheres. There is certainly nothing anomalous in punishing the crime of murder differently in different jurisdictions. It is but the application of legislation to conditions. * * *"

Had Congress intended that the perjury statute in the federal penal code should have effect in the District of Columbia, we think it would have said so in plain language. In the nature of things there must be overlapping of some statutes, but we find no reason to suppose that every general statute of the United States was intended to supersede statutes enacted specifically to meet local conditions. Undoubtedly some general statutes may be concurrently effective with local statutes, but we cannot think Congress intended the local statute covering perjury to apply so far as definition is concerned but meant for the general statute to apply as to punishment. In our view the local statute is exclusively applicable.

The judgment of conviction is, therefore, affirmed.

Affirmed.